UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

DRIP CAPITAL, INC.,

        Plaintiff,

-against-

BIG STOCK, INC., and ITALO LIGERO,

        Defendants.

---------------------------------------------------------------x

24-cv-2755 (CM)

## DECISION AND ORDER

McMahon, J.:

On April 11, 2024, Plaintiff Drip Capital, Inc. filed this lawsuit against Defendants Big Stock, Inc. ("Big Stock") and Italo Ligero. The gravamen of the complaint was that both Defendants had failed to repay inventory financing that plaintiff had provided. Defendants were served in late May and early June of this year, Dkt. Nos. 9, 10, but failed to appear and answer the complaint. The Clerk of Court issued a certificate of default (a ministerial task accomplished without judicial involvement) on August 1, 2024. Dkt. No. 16.

On September 10, 2024, Plaintiff formally moved for a default judgment. In accordance with this court's special rules, the Notice of Motion clearly alerted Defendants to the possibility that a default judgment might be entered against them and warned them of the consequences – in large type. Dkt. No. 23. The motion papers were served on both Defendants on the same day the motion was filed – September 10, 2024. Dkt. No. 27, 28. Defendants still did not appear and contest.

On October 21, 2024, the court entered a default judgment against both Defendants in the

1

amount of $566,086.96, plus post-judgment interest at New York's statutory rate (9%). Dkt. No. 29. At Plaintiff's request the judgment was registered in another district a month later, on November 21, 2024. Dkt. No. 30. I am advised that the plaintiff served a post-judgment information subpoena on the Defendants in December 2024.

Now, in papers filed in June 2025 – a full year after Defendants defaulted, seven months after judgment was entered and six months after receipt of the information subpoena – individual Defendant Italo Ligero has moved to both vacate the court's default judgment and to dismiss the complaint as against him. Because Ligero has not demonstrated that his extended default was the product of excusable neglect, the motion to set aside the default judgment is DENIED, as is the motion to dismiss – which is not a motion that a judgment debtor is able to file.[1]

## I.    Setting Aside a Default Judgment

Rule 55(c) of the Federal Rules of Civil Procedure 55(c), entitled "Setting Aside a Default or a Default Judgment," provides that "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Rule 60(b), in turn, provides, in relevant part, that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Clarifying what is already implicit in the text of the two rules, the Second Circuit has held that when a motion is made to vacate a default *judgment*, rather than a mere *default*, it is the more stringent standard of Rule 60(b) that governs. *See, e.g., Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) ("We will review the District Court's denial

---

[1] Were I to reach the motion to dismiss on the merits, it would be DENIED as well, because the complaint plainly pleads a claim against Ligero. The matters he brings up – all of which go to whether he can be held personally liable for Big Stock's debts on a piercing the corporate veil theory – are fact issues that are properly the subject of litigation; they cannot be resolved on a motion to dismiss.

of the motion to vacate the default judgment under the standards applicable to a Rule 60(b) motion, rather than a Rule 55(c) motion, recognizing, however, that Eagle's motion is made in the default judgment context."); *accord U.S. v. Veeraswamy*, 765 F. Supp. 3d 168, 188 (E.D.N.Y. 2025) ("A motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment." (citation omitted)).

Caselaw details how the text of Rule 60(b) is to be applied in the case of motions to vacate a default judgment. As explained by the Second Circuit in *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983):

> In applying Rule 60(b)(1) in the context of default judgments, courts have gone beyond the bare wording of the rule and established certain criteria which should be considered in deciding whether the designated standards have been satisfied. These criteria....include (1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted."

*Id.* at 915. As the Second Circuit has held in denying a motion to vacate a default judgment in *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (citation omitted), the burden is on the defendant to present "highly convincing" evidence supporting vacatur and show "good cause for the failure to act sooner."

Ligero has made no showing of "excusable neglect" under Rule 60(b) and has certainly not mustered the type of "highly convincing" evidence required to obtain vacatur. That alone is reason to deny the motion.

### a. Mr. Ligero Has Not Made Any Showing of Excusable Neglect.

In moving to vacate the default judgment entered against him, Ligero's Memorandum of Law does not discuss the relevant legal standard for granting such a motion — indeed, the brief does not even mention Rule 60(b), or even Rule 55(c). The brief's discussion of excusable neglect is reprinted below in its entirety:

3

> As shown in the recent correspondence between counsel, and communications between the parties as recent as March 2025 (Italo Declaration at Exhibit B), and between counsel in March 2025 (Declaration of Dan Brecher, Esq. dated June 6, 2025), the excusable delay in submitting this motion from the fall of 2024 to the present, resulted from the continued negotiations and communications between the parties in settlement efforts, that also include communications between counsel for the Plaintiff and counsel for Italo that are submitted as exhibits herein."

Dkt. No. 35, at 2. Notably, the brief speaks only of "the excusable delay *in submitting this motion*" (emphasis added), making no argument to justify why Ligero defaulted in the first place. It is his default, not the amount of time it took to make the motion to vacate, that is supposed to be excusable. Ligero offers no excuse at all for not responding to the complaint or to the original motion for a default judgment.

In his declaration in support of his motion to vacate, Ligero states his position as follows:

> The reason I have not responded to the Complaint or filed this motion sooner is that, as recently as February and March 2025, Plaintiff was sending requests about information concerning Big Stock Inc., and we were seeking an accommodation whereby my father, the correct sole owner of the business, would be replaced as the individual defendant in order to reach a deal to resolve the litigation and the debt the corporation owed (See Exhibit B attached hereto).

Dkt. No. 34, ¶ 6. This does not qualify as excusable neglect for Ligero's default. Moreover, it is not an accurate statement of what occurred. Let us review the facts, which are fully set forth in the papers Plaintiff filed in opposition to Ligero's motion.

Plaintiff's counsel has compiled extensive correspondence between representatives of Drip Capital, their attorneys, and Ligero, showing that Ligero was repeatedly put on notice about the lawsuit and the consequences of failing to respond. *See* Dkt. No. 38-1 through 38-7. The record contains no indication of ongoing negotiations that might have justified his failure to respond.

As noted above, this action was commenced by filing on April 11, 2024. On April 15, 2024, before Mr. Ligero was formally served with the Summons and Complaint in this action, plaintiff's counsel emailed him copies of those documents (at the email address from which Mr.

4

Ligero had already corresponded regarding the debt to plaintiff). *See* Dkt. No. 38-1. In that email to Ligero, plaintiff's counsel states, "We have commenced litigation against you and your company to collect," after Ligero had failed to respond to prior communication with a plan for addressing Big Stock's debt to plaintiff. *See* Declaration of Richard J.J. Scarola ("Scarola Decl."), Dkt. No. 38, ¶ 2 & Ex. 1.

Two days later, on April 17, 2024, plaintiff's counsel sent Ligero an email advising that formal service of the papers would follow if the matter were not resolved. *See id.*, ¶ 3 & Ex. 2.

A second shot-across-the-bow email, this time from one of plaintiff's senior officers to Mr. Ligero, followed on April 19, 2024. *See id.*, ¶ 4 & Ex. 3. In that email, the senior officer wrote, "we commended litigation against your company and you to collect because we have got nowhere in our past discussions. . . . Our outside counsel, Rick Scarola, cc'ed here, emailed you with attachments of the court papers on Monday. He has mentioned that you have not replied to him. . . . Going forward, you need to respond to our counsel." Dkt. No. 38-3.

A third email from plaintiff's counsel to Ligero followed on April 23, 2024, again seeking to resolve the controversy. It clearly informed Ligero that the lawsuit had been filed, not only against Big Stock, but also against him personally, emphasizing the seriousness of the matter and urging him to stop ignoring communications. *See* Scarola Decl., ¶ 5 & Ex. 4. Plaintiff's counsel was unequivocal in his message: "I transmitted our Court papers to you last week, and if we do not work out a plan between us, a judgment will be taken, and quickly." Dkt. No. 38-4.

The record does not reveal any response on Ligero's part to this barrage of communications.

Plaintiff's counsel personally served the Summons and Complaint on Ligero at his residence on May 28, 2024. *See* Dkt. No. 9. Following a brief telephone conversation, counsel then sent a

5

follow-up email to Ligero on May 30th, in which he wrote, *inter alia*, the following:

> Dear Italo — I am glad that I was able to talk with you briefly on the telephone at your place on Tuesday when I served the Court papers (the attached Summonses and Complaint and related document (it is called a 'Civil Cover Sheet')). I have sent these papers to you previously by email, and you should have copies in a number of other ways, including by additional service upon the company which I understand from our process server has now been completed from our end.
>
> I had thought about writing to reemphasize the personal liability you face and the mounting collection costs now that we have to pursue litigation. But I realize I wrote all of that on April 23 (the email that I am forwarding here). I am not sure if you understand what you are facing, but I urge you to get clear that you personally, as well as the company, are now served in this federal court lawsuit for the amounts owed on amounts that will increase substantially as we incur costs to collect (which your contract entitles us to recover).
>
> This will not just go away.
>
> This will not get better by ignoring it . . . .
>
> Your deadlines to deal with the lawsuit as a lawsuit are running[.]

*See* Scarola Decl., ¶ 6 & Ex. 5. Ligero did not respond to this communication.

Plaintiff's counsel sent yet another email to Ligero on June 19, 2024, transmitting a scheduling order, Dkt. No. 8, and urging Ligero to get in touch. *See* Scarola Decl., ¶ 7 & Ex. 6. Again, Ligero did not respond.

In other words, Ligero had plenty of warning that he had been personally sued and that he had best not ignore that fact. Nonetheless, he continued to ignore that fact. He has offered no excuse for his conduct. He was certainly not engaged in any sort of settlement discussions during this period. And he did not file any response – answer or motion – to the complaint that had been served against him.

Plaintiff served Ligero by mail with papers in support of its request for entry of a Clerk's

6

Certificate of Default on July 31, 2024. *See* Dkt. No. 15.[2]  On that same day, Plaintiff sought entry of a Clerk's Certificate of Default. Dkt. No. 13-14. The Clerk entered that certificate the following day. Dkt. No. 16.

Plaintiff's counsel followed up with yet another email to Ligero on August 4, 2024, transmitting those same papers to him again and continuing to push for a resolution of this dispute. *See* Scarola Decl., ¶ 9 & Ex. 7.

On August 13, 2024, Plaintiff sought to have a default judgment entered on the Certificate of Default, Dkt. No. 17, and Plaintiff served those papers on Ligero as well, Dkt. No. 18.

This time, Plaintiff's counsel heard back from an attorney purporting to represent Ligero. On August 19, 2024, plaintiff's counsel received an email and letter from a Pennsylvania law firm, the Ginsburg Law Firm. In the letter, the Ginsburg Firm advised that it would be appearing in this action as soon as local counsel could be retained. The Ginsburg Firm asked plaintiff's counsel to stipulate to vacate the default and allow an Answer to the Complaint, while defendants work to secure a loan to pay the debt owed. *See* Scarola Decl., ¶ 11 & Ex. 8.

Plaintiff's counsel responded the next day, declining to agree to vacate the default but expressing hope that Ligero would ultimately pay the debt. *See* Scarola Decl., ¶ 12 & Ex. 9. On September 5, 2024, the same firm sent another email asking that plaintiff forbear from collection efforts because defendants "are in the process of negotiating a refinance which would satiate your client." *See* Scarola Decl., ¶ 13 & Ex. 10. Plaintiff's counsel responded on September 9, 2024, asking for a more concrete plan to satisfy the debt before considering any forbearance. *See* Scarola

---

[2] These papers were sent before the Clerk had entered a certificate of default and were not in accordance with my individual rules, which supersede any Local Rule to the contrary. Counsel are expected to educate themselves about such matters.

7

Decl., ¶ 14 & Ex. 11.

Plaintiff never heard from this law firm again. *See* Scarola Decl., ¶ 15. Needless to say, neither the Ginsburg Firm nor any local counsel appeared in this court, despite the pendency of default proceedings – an absolutely inexcusable course of action. This brief and inconclusive exchange of email was the only effort at "negotiation" during the period prior to entry of the default judgment.

To avoid vacatur motions like this one, I have developed the practice of declining to enter default judgments on a Clerk's Certificate alone. Instead, I insist that the defendant file a motion for default judgment, containing an explicit warning, in large typeface, about the consequences of continued inaction. That way there can be no excuse for a defendant's failing to respond to a pending lawsuit. And it is my practice to vacate Certificates of Default if a Defendant belatedly appears after receiving this explicit notice.

Plaintiff's counsel served and filed the requisite motion on September 10, 2024. Dkt. No. 23, 27–29. The motion was met with continued silence – as noted, neither the Ginsburg Firm nor any other lawyer made an appearance to contest it. So, after more than 30 days had passed, the court granted the motion and entered a default judgment in the amount of $566,086.96 against both Big Stock and Ligero on October 21, 2024. Dkt. No. 29.

After the default judgment was entered, Plaintiff began the process of post-judgment discovery to collect thereon. Counsel again reached out to Ligero to resolve the matter – this time on December 5, 2024:

> I have been trying to reach you in the hope of having a businesslike conversation about the Judgment and our next steps. I have tried to leave word on your various phone numbers, but have not heard back from you. Please let me hear from you and let's pick a time to speak.

Scarola Decl., ¶ 19 & Ex. 12. In a December 20, 2024 email, Ligero suggested a January call to

8

discuss the matter. Scarola Decl., ¶ 20 & Ex. 13. No such call ever took place. Ligero's current attorney first contacted plaintiff's counsel on March 10, 2025. He did not move to vacate the default judgment until three months later.

We now turn to the correspondence that is purported to show "ongoing negotiations"—communications that, according to Ligero, excuse his failure to respond to the Complaint or to the Motion for Default Judgment. Plaintiff served information subpoenas on both Big Stock and Ligero. Ligero appears to have made a partial response, though it is unclear whether he did so on his own behalf or on behalf of the corporation. Due to the incomplete nature of that response, Plaintiff's employees sent two follow-up emails to Ligero – on February 26, 2025, and March 18, 2025 – asking for various documents related to the Big Stock entity. These included tax returns, financial statements, bank records, and other materials necessary to assess Big Stock's risk profile. *See* Dkt. No. 34, Ex. B. Plaintiff was seeking these documents to enforce the judgment, which had been entered months earlier. *See* Scarola Decl., ¶ 23. Nothing in this correspondence provides any justification for Ligero's failure to respond to the Complaint or to Plaintiff's motion for default judgment, which had been filed the previous September. Nor does it suggest any "ongoing negotiations" that could explain or excuse the default that occurred months earlier.

Finally, two emails were exchanged between Plaintiff's attorneys and Defendants' current counsel on March 18, 2025 and March 19, 2025 – months after the default judgment was entered. *See* Dkt. 32 & Ex. A. The first of these emails was from Mr. Brecher, Ligero's attorney, advising Plaintiff's counsel that he intended to move to set aside the default and suggesting the possibility of settlement discussions. The response from Plaintiff's counsel essentially said, "Give it your best shot."

Ligero's belated effort to initiate negotiations, in a patent attempt to create the appearance of excusable neglect when none exists, does not explain his persistent failure to respond to this lawsuit despite his being aware of it for nearly a year, and despite repeated warnings from Plaintiff's counsel about the consequences of inaction. Nor does this belated email exchange explain why the threatened vacatur motion was not made filed until three months after this exchange took place.

Because of this court's special rules, Ligero had not just one, but two opportunities to respond to Plaintiff's complaint and avoid the consequences of a default judgment. He availed himself of neither. Nothing in the moving papers justifies either Ligero's failure to respond to the summons originally served on him, or his failure to respond to the ensuing default judgment motion.

The moving papers make no effort to explain or justify: (i) why Ligero did not answer the Complaint served on him in May 2024, (ii) why Ligero did not oppose the entry of a default judgment against him, despite having ostensibly retained lawyers shortly before the Motion for Default Judgment was served, (iii) why Ligero did not take action to vacate the default judgment immediately after its entry, or after being served with post-judgment discovery in December 2024.

Under settled case law in this Circuit, he has failed to demonstrate excusable neglect that would justify vacatur of the default judgment. Indeed, the only conclusion one can draw is that his default was willful.

In discussing the willfulness standard in the context of excusable neglect, courts have repeatedly stressed that the burden is on the party that defaulted to make some showing of excusable neglect and that the judgment will not be vacated absent that showing:

> Rule 60(b)(1) permits relief on grounds of "mistake, inadvertence, surprise, or excusable neglect", however, "relief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment. Instead the party must make some showing of why he was justified in failing to avoid mistake or inadvertence." 11 Wright, Kane, Miller, *Federal Practice and Procedure: Civil 2d,* § 2858 at 276–77 (1995). Local 8A does not indicate any justification for failing to raise this argument in opposition to the underlying motion.

*AMS Techs., Inc. v. Metal Polisher Prod.*, No. 95 CIV. 7297 (RWS), 1997 WL 473546, at *3 (S.D.N.Y. Aug. 18, 1997); *Pastor v. Sullivan*, No. 87 Civ. 6337, 1990 WL 209451, at *3 (S.D.N.Y. Dec. 12, 1990) (same).

Moreover, that burden cannot be sustained when, like Mr. Ligero here, a party plainly exhibited a lack of basic diligence:

> Rule 60(b)(1) permits a court to vacate a judgment on the grounds of 'excusable neglect.' Fed. R. Civ. P. 60(b)(1). However, where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted 'excusable neglect.' See *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971) (per curiam); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858, at 288–89 (2d ed. 1995) ('Insufficient showings for relief [under Rule 60(b)(1)] . . . include when the party or attorney did not act diligently'); 12 James Wm. Moore *et al., Moore's Federal Practice* § 60.41[1][c][ii], at 60–90 (3d ed. 1997) ('Courts repeatedly deny relief [pursuant to 60(b)(1)] when they find that the facts and circumstance[s] demonstrate a lack of diligence in pursuing or defending litigation.'). *Cf. Ramseur v. Beyer*, 921 F.2d 504, 506 (3d Cir.1990) (recognizing that a court must be satisfied that attorneys acted with substantial diligence before finding 'excusable neglect'). Hence, when a party demonstrates a lack of diligence in defending a lawsuit, a court need not set aside a default judgment. *See Florida Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 784 (11th Cir.1993) (per curiam).

*State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 177 (2d Cir. 2004); *see also Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 169 Fed. Appx.

11

45, 46 (2d Cir. 2006) ("Where a party fails to act with diligence, he will be unable to demonstrate that his conduct constituted excusable neglect").

Likewise, courts have held that excusable neglect cannot be shown even where a party exhibits "gross carelessness" or claims ignorance of relevant rules:

> Although the Second Circuit has held that "excusable neglect" is to be construed generously, the case law is quite clear that the moving party "must make some showing of why he was justified in failing to avoid mistake or inadvertence." Specifically, "Gross carelessness is not enough. . . . Ignorance of the rules is not enough, nor is ignorance of the law."

*Chubb & Son, Inc. v. Kelleher*, No. 92CV4484CBARML, 2007 WL 9706844, at *5 (E.D.N.Y. Dec. 6, 2007), *report and recommendation adopted,* No. 92 CV 4484 (CBA), 2008 WL 11411864 (E.D.N.Y. Feb. 19, 2008) (internal quotations and citations omitted); *see also* 11 Fed. Prac. & Proc. Civ. § 2858 (3d ed.).

Nothing in Ligero's papers demonstrates the slightest excuse for his extended refusal to deal with this lawsuit. He offers no reason for ignoring the Summons or the Motion for Default Judgment. That he neglected the matter is clear; that the neglect was of his own doing is equally so. That his neglect was not "excusable" is beyond dispute. In fact, Ligero's neglect was willful.

Because Ligero's neglect was willful, the Court declines to vacate the default judgment. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991), *cert. denied*, 503 U.S. 1006 (1992) ("A default should not be set aside when it is found to be willful."). There is no need to proceed to a discussion of the other two factors. *Jaramillo v. Vega*, 675 F. App'x 76 (2d Cir. 2017) ("A court need not consider all three criteria . . . because its determination that the default was willful is sufficient to support the denial of a motion to vacate."); *Star Asia International, Inc. v. Old Dominion Footwear, Inc.*, No. 18-CV-4741 (JMF), 2019 WL 2371632, at *3 (S.D.N.Y. June 5, 2019) (denying a motion to vacate a default judgment based on a finding that the default was

willful, without consideration of the meritorious defense and prejudice factors). Because a showing of excusable neglect – or another statutory ground such as mistake, inadvertence, or surprise – is the *sine qua non* for vacatur of a default, and because no such showing has been made, the motion to set aside the judgment can be denied on this basis alone.

## II. Motion to Dismiss

Ligero's motion to dismiss is DENIED. He has had a default judgment entered against him, which the court has declined to vacate. His default functions as an admission of all the facts that are pleaded in the complaint, which he is precluded from contesting. *See, e.g., S.E.C. v. Amerindo Inv. Advisors*, 639 Fed. App'x. 752, 754 (2d Cir. 2016) ("The district court ordered the Entity Defendants to appear at a hearing and show cause why default judgment should not be entered against them; they did not appear. Appellants nevertheless challenge a number of facts in the complaint, something the Entity Defendants cannot do because 'a default is an admission of all well-pleaded allegations against the defaulting party.'"); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992) ("The Defaulting Defendants may not participate in the merits aspect of the trial, as their default judgments stand as admissions of liability"); *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 161 (N.D.N.Y. 2020) ("the Defaulting Defendants may not participate in the merits aspect of the trial, as their default judgments stand as admissions of liability").

On this same basis, courts confronted with a party like Ligero, who couples a motion to vacate a default or default judgment with a motion to dismiss, have repeatedly held that the motion to dismiss may not be entertained until and unless the default is vacated. *See, e.g., Logan v. World Luxury Cars, Inc.*, No. 1:15-cv-00248-ENV-PK, 2022 WL 2466834, at *9 n.5 (E.D.N.Y. Mar. 30, 2022), *report and recommendation adopted*, No. 1:15-cv-00248-ENV-PK, 2023 WL 156878

(E.D.N.Y. Jan. 11, 2023) ("There is no basis for dismissing the Complaint unless the default judgment is vacated and the case reopened."); *Ruby Mt. Heli-Ski Guides, Inc. v. SledNV, Inc.*, No. 2:23-cv-01068-JAD-DJA, 2023 WL 8716845, at *1 (D. Nev. Dec. 15, 2023) ("'Entry of a defendant's default cuts off defendant's right to appear in the action or to present evidence.' Once a defendant has been defaulted, '[t]he only procedure available to [him] is to file a motion to set aside the default under FRCP 55(c).' So, unless and until he has succeeded in getting the default set aside, a defaulted defendant simply can't file a motion to dismiss" (quoting Stevenson & Fitzgerald, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial § 6:42) (footnotes omitted)); *Wallace v. Fortune Hi-Tech Mktg.*, No. 5:11-127-GFVT, 2015 WL 12977342, at *5 (E.D. Ky. Mar. 26, 2015) ("an entry of default generally precludes the defaulted party from challenging the plaintiff's allegations or from filing subsequent motions for affirmative relief. *See* 46 Am. Jur. 2d Judgments §304; *see also Clifton v. Tomb*, 21 F.2d 893 (4th Cir. 1927); 10A Wright & Miller, *Federal Prac. & Proc. Civ.* § 2688 (3d ed.)"); *In re Minix*, No. 17-51915, 2018 WL 3689181, at *2 (Bankr. E.D. Ky. Aug. 1, 2018) ("the entry of a clerk's default generally precludes a defendant from contesting liability or seeking affirmative relief in the case unless and until the default has been set aside"); *Ashe v. M/Y After Hours*, No. 13-23467- CIV, 2014 WL 12570280, at *1 (S.D. Fla. Jan. 29, 2014) ("Because Defendant Sabharwal failed to vacate the clerk's default before moving to dismiss the Complaint, the Court denied the motion to dismiss"). For this reason, Mr. Ligero's motion to dismiss is procedurally improper. The motion would have been denied on the merits in any event. At best, Ligero has explained why there are litigable issues of fact concerning his alter ego liability. *See supra* n.1.

Last, the court should make mention of the suggestion in Ligero's moving brief that this matter is required to go to arbitration. Dkt. No. 35, at 7. That is simply not correct for two reasons.

*First*, by defaulting, Ligero has forfeited any right he may have had to move to compel arbitration. New York law on the subject is clear. *See, e.g., Charming Shoppes, Inc. v. Overland Const., Inc.*, 186 Misc. 2d 293, 297, 2000 WL 1779198 (Sup. Ct. Monroe Cnty. Nov. 3, 2000) ("The Defendant effectively waived its right to enforce the arbitration clause when it failed to answer or appear in response to the summons and complaint under circumstances where there was no reasonable excuse for such default").

*Second*, while Ligero does not attach the parties' loan agreements, Plaintiff does. In its earliest iteration, dated August 10, 2021, the loan agreement contained a clause giving Plaintiff – and only Plaintiff – the right (but not the obligation) to send disputes to arbitration. The exact language says that plaintiff "shall be entitled to require that any [dispute] . . . be resolved by final and binding arbitration," Dkt. No. 34, at Ex. A, ¶ 12, while also clearly providing, for example, in the very next paragraph, that the parties waive the right to a jury trial "in any action, proceeding or other litigation of any type brought whether with respect to contract claims, tort claims or otherwise." The arbitration language is permissive, not mandatory; and the parties plainly contemplated the possibility of litigation as an alternative to arbitration. And the August 10, 2021 form of agreement was replaced by a new form of agreement dated February 3, 2023, which contains no arbitration clause at all. *See* Scarola Decl., Ex. 14, at 7.

### III. CONCLUSION

The motion to set aside the default judgment at Docket No. 31 is DENIED. The motion to dismiss – also at Docket No. 31 – is denied as improperly made and moot. The Clerk is directed to remove the motion at Docket No. 31 from the court's list of open motions and to close this case.

This is a written opinion. It is the decision and order of the court.

It is so ordered.

Dated: September 16, 2025

                                                                U.S.D.J.

BY ECF TO ALL COUNSEL